IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY INCUBATOR, INC., | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:07-CV-468 |
| v. | § § | |
| SHARP CORPORATION, et al., | § § § | |
| Defendants. | § § § | |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Dkt. No. 75. Also before the Court is Plaintiff's response, Defendants' reply, and Plaintiff's sur-reply. Dkt. Nos. 86, 94, and 102. The above-captioned case has been referred to United States Magistrate Judge Barry A. Bryant for all pretrial proceedings. Dkt. No. 33. Magistrate Judge Bryant held a hearing on the above-mentioned motion on May 11, 2009, and entered a Report and Recommendation (the "Report and Recommendation" or the "R&R") on July 6, 2009. *See* Dkt. Nos. 158 and 200. Defendants have filed objections to the Report and Recommendation, and Plaintiff has responded. Dkt. Nos. 223 and 229. Having considered the briefing and all relevant papers, the Court finds that Defendants' objections should be SUSTAINED IN PART and OVERRULED IN PART.

# I. BACKGROUND

Defendants move to dismiss for lack of subject matter jurisdiction or for failure to join a necessary and indispensable party. *See* Dkt. No. 75. Defendants argue that Plaintiff ATI is a bare licensee and lacks sufficient rights to bring suit on its own. *Id.* at 10-13. The agreements at issue are an Assignment and Patent License Agreement ("APLA") and an Assignment of Rights ("AOR"), both executed in December 2006 by ATI and LG Philips LCD Co., Ltd. ("LGL"). *See* Dkt. No. 86 at Exs. 1 and 2. Defendants submit that in the APLA and the AOR, LGL reserved: a right to sue ATI for breach if ATI transferred the patents-in-suit without consent; a royalty-free license to the patents-in-suit; a right to half of any gross revenue obtained by ATI from licensing the patents-in-suit; and an obligation to maintain the patents-in-suit. *Id.* at 13-18. Defendants also note that there were four pre-existing licenses granted by LGL that were unaffected by the APLA and the AOR. *Id.* at 12-13. In December 2008, over one year after ATI filed the above-captioned suit, ATI and LG Display Co., Ltd.,[1] executed an Acknowledgment (the "2008 Acknowledgment"), in which LG purportedly disclaimed any ownership interest in the patents-in-suit. *See* Dkt. No. 86 at Ex. 9.

# II. REPORT AND RECOMMENDATION

First, Magistrate Judge Bryant recommended that ATI has constitutional standing because, for example, LG assigned to ATI the right to transfer (albeit subject to LG's consent), the right to sue, and the exclusive right to license. Dkt. No. 200 at 9-13. Magistrate Judge

---

[1] While LG Philips LCD Co., Ltd. executed the APLA and the AOR. *See* Dkt. No. 86 at Exs. 1 and 2. "LG Philips LCD Co., Ltd. is now called LG Display." Dkt. No. 75 at 1 n.1; *see also* Dkt. No. 86 at Ex. 9 ("LG Display Co. Ltd, formerly known as and successor to LG.Philips LCD Co., Ltd."). LG Display executed the 2008 Acknowledgment. *See* Dkt. No. 86 at Exs. 1 ,2, and 9. LG Philips LCD Co., Ltd. and LG Display are collectively referred to herein as "LG."

Bryant also found that pre-existing licenses did not prevent ATI from being deemed an exclusive licensee. *Id.*

Second, Judge Bryant recommended that ATI has prudential standing, noting that the APLA provided that only ATI had the right to sue for past, present, or future infringement. *Id.* at 13-14. Magistrate Judge Bryant submitted that transfer of the right to sue weighs heavily in favor of finding a transfer of all substantial rights because such a transfer avoids the problem of a non-party co-owner that might bring a separate suit against the same accused infringer based on the same patents. *Id.* As to the right to transfer, Magistrate Judge Bryant found that the right "need not be absolute in order for a party to have prudential standing." *Id.* at 15-16. Further, Magistrate Judge Bryant noted that LG did not retain a right to license and that previous licensees were not granted a right to sublicense. *Id.* at 16.

Third, Judge Bryant found that even if prudential standing were found defective, prudential standing is curable post-filing and the 2008 Acknowledgment cured any prudential standing defect. *Id.* at 16-18.

### III.  OBJECTIONS AND RESPONSES

First, Defendants object that a post-filing agreement cannot cure a lack of prudential standing. Dkt. No. 223 at 2-7. For example, Defendants argue that a *nunc pro tunc* agreement can only cure lack of prudential standing "when the transferor was uninvolved with asserting the patents and granted a quit claim assignment." *Id.* at 5. Defendants argue that LG has been heavily involved and has not quitclaimed. *Id.* at 5-6. Defendants also submit that the agreements granting rights to ATI are set to terminate when the patents expire even though a patentee can sue

3

for damages up to six years after expiration. *Id.* at 7.  Defendants further note that LG retained a right to up to half of ATI's proceeds on licenses. *Id.*  Second, Defendants object that ATI did not have constitutional standing at time of filing "since LG retained such substantial rights in the patents." *Id.* at 7-9.  Defendants argue that the Report and Recommendation misinterpreted applicable precedent in finding that a transferee can be an exclusive licensee in spite of pre-existing licenses to others. *Id.*  Third, Defendants object that even the APLA supplemented by the Acknowledgment "does not confer sufficient rights to make ATI an 'exclusive' licensee with *prudential* standing." *Id.* at 9-10.  Fourth, Defendants argue that pursuant to Federal Rule of Civil Procedure 19, the Court should require joinder of LG or should dismiss ATI's suit. *Id.* at 10-12.  Defendants submit, for example, that ATI's damages expert relies on a hypothetical negotiation between LG and Defendant Sharp as a basis for damages calculations.  Id.

ATI responds that it has constitutional standing because, for example, LG granted ATI the exclusive right to sue.  Dkt. No. 229 at 1-6.  As to prudential standing, ATI argues that the Court should reject Defendants' assertion that prudential standing defects cannot be cured post-filing. *Id.* at 7-11.  In particular, ATI submits that the cases relied upon by Defendants did not involve a pre-filing assignment, as is the case here, and are therefore distinguishable. *Id.* at 9.  As to the effect of expiration of the APLA, ATI responds that Defendants cannot show how LG would automatically reacquire from ATI the right to sue for past damages. *Id.* at 11.  ATI also notes that the APLA effected an irrevocable grant such that the patents-in-suit will *not* revert back to LG, even upon termination of the APLA. *Id.* at 12.  ATI further submits that its damages expert considered a hypothetical negotiation between LG and Defendant Sharp but "did not rely on any 'secret' LG documents as implied by Defendants." *Id.* at 14.

## IV. LEGAL PRINCIPLES

The Court reviews a party's challenge to the decision of a magistrate judge in a dispositive matter pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure ("Rules"). Defendants' motion to dismiss is a dispositive motion, and Rule 72(b) requires this Court to review *de novo* the portions of the magistrate judge's recommendation to which there are proper objections. Based on its review, this Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Plaintiff has the burden of demonstrating standing. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). Standing is a jurisdiction issue and can be raised at any time. Fed. R. Civ. P. 12(h)(3); *Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). Where a defendant presents evidentiary materials in support of a motion to dismiss for lack of subject matter jurisdiction, "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981).

As set out in more detail in the Report and Recommendation, issues regarding whether an agreement is an assignment or a license, as well as the character of the license, turn on the intent of the parties and the substance of the agreement, such as regarding what rights were granted and what rights were retained. *See* Dkt. No. 200 at 5-9.

## V. DISCUSSION

### A. Constitutional Standing

ATI was granted the right to sue by the APLA before ATI filed the present suit. ATI was also granted an exclusive license, and ATI therefore has constitutional standing to bring suit, as discussed in the magistrates Report and Recommendation, which the Court ADOPTS in this regard. *See* Dkt. No. 200 at 9-13.

As discussed in the Report and Recommendation, the authorities submitted by Defendants, such as *Raber v. Pittway Corp.*, No. C-91-2399-JPV, 1992 WL 219016 (N.D. Cal. June 15, 1992), and *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), do not compel a contrary conclusion. *See* Dkt. No. 200 at 9-13. To the extent that the *Pfizer* decision cited by Defendants suggest a contrary conclusion, this Court finds the Report and Recommendation is in accordance with the weight of authority in this regard. *See Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1373-74 (D. Del. 1993) (finding the plaintiff was not exclusive licensee where grantor retained right to a license for itself and its affiliate); *MediaTek, Inc. v. Sanyo Electric Co.*, No. 6:05-cv-323, 2007 WL 5186792, at *5-7 (E.D. Tex. Apr. 16, 2007) (Davis, J.) (rejecting proposition that "mere existence of a nonexclusive license automatically defeats all attempts to assign a patent or create an exclusive license"); *Abbott Labs v. Diamedix Corp.*, 47 F.3d 1128, 1132-34 (Fed. Cir. 1995) (grantee was exclusive licensee with standing even though grantor retained license). LG retained a license but did not retain a right to license anyone other than its subsidiaries, so ATI had LG's promise "that others shall be excluded from practicing the invention" unless licensed by ATI. *Mars*, 527 F.3d at 1368; *see* Dkt. No. 86, Ex. 1 at § 3.1 ("In consideration of LPL's assignment of the Patents to ATI, ATI

hereby grants to LPL and its Subsidiaries a worldwide, fully paid up, non-exclusive, non-transferable, and irrevocable license under the Patents . . . . This license does not include the right to sublicense or file suit for enforcement of the Patents.").

**B. Prudential Standing**

Defendants argue that pre-existing licenses barred ATI from becoming an exclusive licensee with all substantial rights, but Magistrate Judge Bryant rejected Defendants' argument, and this Court ADOPTS the Report and Recommendation in this regard. Dkt. No. 200 at 9-13; *see also MediaTek*, 2007 WL 5186792, at *5-7 (noting that neither of the licensors retained any right to enforce the patents-at-issue or to indulge infringement thereof and finding that "non-exclusive licenses do not [a]ffect the transfer of substantial patent rights"). Also, even a reversion interest, if one really exists, does not preclude finding that ATI was an exclusive licensee with all substantial rights under the APLA. *Cf. Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1252 (Fed. Cir. 2000) ("[A] licensor does not retain a substantial right in a patent merely by reserving a reversion in the patent contingent upon the licensee's financial distress or the licensee's cessation of production of machines embodying the patented invention.") (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia*, 944 F.2d 870, 875 (Fed. Cir. 1991)).

Examination of the APLA and the AOR reveals that ATI was indeed granted some substantial rights. ATI received the right to enforce the patents-in-suit and "all rights to pursue all past, present and future damages, injunctive relief, and other remedies for past, present and future infringement of the Patents." APLA, Dkt. No. 86, Ex. 1 at § 2. Grant of the right to sue is "particularly dispositive" because "[t]he policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent

7

against a single infringer." *Vaupel*, 944 F.2d at 875-76 (finding that Rule 19 did not compel any joinder because "complete relief can be afforded among those already parties and there is no substantial risk of a party incurring double obligations"). Still, "a 'right to sue' clause in a contract, unaccompanied by the transfer of other incidents of ownership, does not constitute an assignment of the patent rights that entitles the transferee to sue in its own name." *Propat Int'l. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1192 (Fed. Cir. 2007).

Overall, LG retained enough rights under the APLA and the AOR that ATI did not then become an exclusive licensee with all substantial rights. First, LG retained a 30-50% interest in ATI's proceeds from the patents-in-suit, depending on their amount. Dkt. No. 86, Ex. 1 at § 3.2. In at least some circumstances, retention of "a right to receive infringement damages" does not "reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." *Vaupel*, 944 F.2d at 875. LG's retained equity interest is nonetheless a factor for consideration. *Propat*, 473 F.3d at 1191. Second, LG retained a right to veto "in its sole discretion" any proposed sale of the patents-in-suit. Dkt. No. 86, Ex. 1 at § 3.3. The "right to veto any transfer" is "particularly significant" because "[t]he right to dispose of an assert is an important incident of ownership." *Propat*, 473 F.3d at 1191. Third, LG's patent counsel remained responsible for maintenance fees for the patents-in-suit. Dkt. No. 86, Ex. 1 at § 3.4. "The responsibility to maintain a patent is one of the obligations that has been recognized by [the Federal Circuit] as an indication that the party with that obligation has retained an ownership interest in the patent." *Propat*, 473 F.3d at 1191. Fourth, ATI had an obligation to LG "to use commercially reasonable efforts to negotiate and enter into licenses of the [patents-in-suit] . . . ." Dkt. No. 86, Ex. 1 at § 3.6. This apparent lack of a right to "indulge an infringement" is also a factor that may be found

inconsistent with ownership. *Sicom Sys., Ltd. v. Agilent Techs.*, 427 F.3d 971, 978-79 (Fed. Cir. 2005); *Verve, LLC v. Thales E-Transactions, Inc.*, No. Civ. 05-40032, 2006 WL 800754, at *4 (E.D. Mich. Mar. 27, 2006).

On balance, while none of the above considerations are necessarily dispositive in isolation, Defendants have shown that although ATI was an exclusive licensee at the time of filing suit, ATI did not have all substantial rights so as to accord ATI the status of "patentee" under 35 U.S.C. § 281. The Court therefore VACATES the Report and Recommendation regarding prudential standing at the time ATI filed suit. *See* Dkt. No. 200 at 13-16.

## C. Cure of Prudential Standing Defects

Defendants argue that ATI could not cure its lack of prudential standing post-filing and, even if post-filing cure were permissible, ATI's attempted cure was deficient. "[A] plaintiff with constitutional standing may cure prudential standing defects after it files suit." *See VirnetX, Inc. v. Microsoft Corp.*, No. 6:07-cv-80, 2008 U.S. Dist. LEXIS 94854, at *7 (E.D. Tex. June 3, 2008) (Davis, J.) (citing *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001), *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1326-27 (Fed. Cir. 2007), and *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1344 (Fed. Cir. 2007)); *see also Positive Techs., Inc. v. LG Display Co.*, No. 2:07-cv-67, 2008 WL 4425372, at *3 (E.D. Tex. Sept. 24, 2008) (Ward, J.) (noting that "the Federal Circuit has recognized on many occasions the ability to cure prudential standing defects post filing"); *see generally VirnetX, Inc.*, 2008 U.S. Dist. LEXIS 94854, at *11-21 (analyzing grantor's retained equity interest and rights, finding that grantee did not receive all substantial rights, and requiring joinder of grantor pursuant to Rule 19 in light of policy of "avoid[ing] the potential for multiple

9

litigations and multiple recoveries against the same alleged infringer."); *cf. Propat Int'l. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007) ("[A]n action brought by the exclusive licensee alone may be maintained as long as the licensee joins the patent owner in the course of the litigation."). The Court therefore rejects Defendants' argument and ADOPTS the Report and Recommendation regarding curability of prudential standing defects. *See* Dkt. No. 200 at 16-18.

The Court also ADOPTS the Report and Recommendation as to its finding that ATI cured any defect in prudential standing through the 2008 Acknowledgment. *See id.* LG therein disclaimed any right to enforce the patents-in-suit and agreed to be bound by the outcome of the case at bar. Dkt. No. 86, Ex. 9 at ¶¶ 1 and 4. LG also waived any requirement that ATI obtain LG's consent before transferring the patents-in-suit. *Id.* at ¶ 2. Further, at the time of the 2008 Acknowledgment, all maintenance fees for the patents-in-suit had been paid. *Id.* at ¶ 3. LG retained, however, "the right to share in Net or Gross Proceeds." *Id.* at ¶ 2. ATI's obligation "to use commercially reasonable efforts to negotiate and enter into licenses" is also apparently unaffected by the 2008 Acknowledgment. Dkt. No. 86, Ex. 1 at § 3.6; *see* Dkt. No. 86 at Ex. 9. On balance, given the mootness of maintenance fees and the elimination of LG's restraint on ATI's right to transfer, the 2008 Acknowledgment rendered ATI an exclusive licensee with all substantial rights because LG now only retains a right to proceeds and associated rights. *See Vaupel*, 944 F.2d at 875; *Positive Techs.*, 2008 WL 4425372, at *4 (E.D. Tex. Sept. 24, 2008) (finding that an entity "retained an equity interest in the patents under the reassignment, which does not divest [plaintiff] of [prudential] standing").

Defendants reliance on the *Enzo* decision is unpersuasive. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998). *Enzo* primarily concerned the effect of a

purported oral license and did not specifically address prudential standing. *Enzo*, 134 F.3d at 1093 ("While we acknowledge that a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing. The limited exception we have provided conferring standing on licensees is restricted to virtual assignees.") (citing 35 U.S.C. § 261).

Defendants' reliance on *Gaia* is also unpersuasive. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779-780 (Fed. Cir. 1996), *am.* 104 F.3d 1296 (Fed. Cir. 1996). The finding in *Gaia* that a *nunc pro tunc* agreement was "not sufficient to confer standing on Gaia retroactively" apparently addressed constitutional standing, not prudential standing. *Gaia*, 93 F.3d at 779-780.

Further, the *Messagephone* decision does not compel a contrary finding. *Messagephone, Inc. v. SVI Sys., Inc.*, Nos. 99-1471, 99-1478, 2000 WL 1141046 (Fed. Cir. 2000). Although the *Messagephone* court found that "a *nunc pro tunc* assignment executed after filing of a lawsuit cannot retroactively cure standing that was deficient at the time of filing," the standing at issue was standing to sue for infringement the occurred before assignment or license; *Messagephone* thus concerned constitutional standing rather than prudential standing. *Id.* at *4-5 ("[A] party may sue for infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so . . . .") (citing *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 & n.7 (Fed. Cir. 1991)).

**D. Other Considerations**

A retained economic interest of the grantor, as well as control of the grantor over the grantee, are relevant when considering prudential standing and joinder. *See VirnetX*, 2008 U.S.

Dist. LEXIS 94854, at *20-22.[2]  The Court takes note of briefing on DNP Defendants' recent Motion to Compel the Production of Documents Withheld as Privileged, which Magistrate Judge Bryant denied on July 29, 2009.  *See* Dkt. Nos. 184, 189, 195, 209, and 220; *see* Order, Dkt. No. 231.  This briefing suggests that LG's status as a non-party has been a factor in discovery.  Dkt. No. 184 at 1-2 and 6-7.  On balance, the Court has not been presented with sufficient evidence to require joinder of LG in order to curtail purported discovery abuse.  *See* Dkt. No. 231 at 11 n.12.

## VI.  CONCLUSION

For at least the reasons set forth above, Defendants' objections (Dkt. No. 223) are hereby **SUSTAINED IN PART** and **OVERRULED IN PART**.

In accordance with the Report and Recommendation, as adopted and modified above, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 75) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 10th day of August, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

---

[2] ("Nor will this Court allow a non-party with a substantial economic interest in the lawsuit and substantial control over either the plaintiff or the rights to the patent-in-suit to shield, delay production of, or defray the costs of producing items the plaintiff would be obligated to produce under Rule 26, the Local Rules, particularly L.R. 26 and P.R. 3-2, and the Discovery Order.  Such an interested non-party may not use agreements or shell entities to obtain the benefit of this Court's liberal discovery policy while the interested non-party shelters under Rule 45, escalates an accused infringer's litigations costs, and withholds discoverable information.")